**Glenn BROWN, Appellant,**

v.

**LOUISVILLE JEFFERSON COUNTY REDEVELOPMENT AUTHORITY, INC. and Louisville/Jefferson County Metro Government, Appellees.**

No. 2008–CA–001890–MR.

Court of Appeals of Kentucky.

April 9, 2010.

Garry R. Adams, Louisville, KY, for appellant.

Grover C. Potts, Jr., Louisville, KY, for appellee.

Before ACREE, KELLER, and LAMBERT, Judges.

*OPINION*

LAMBERT, Judge.

Glenn Brown appeals from the entry of a summary judgment order in favor of

Louisville Jefferson County Redevelopment Authority, Inc., (hereinafter "LRA") and Louisville/Jefferson County Metro Government (hereinafter "Metro Government") entered by the Jefferson Circuit Court on September 15, 2008. This order dismissed all of Brown's claims against LRA and Metro Government. On appeal, Brown argues that the trial court erred in dismissing his claims of promissory estoppel/detrimental reliance and fraud arising from an employment relationship between Brown and LRA/Metro Government. After careful review, we agree with Brown that summary judgment in Appellees' favor was premature as to these claims. We therefore must vacate that portion of the trial court's order and remand this matter for further proceedings. Brown does not appeal the trial court's dismissal of his claims of racial discrimination, and thus we hereby affirm those portions of the trial court's order.

Since this appeal addresses the propriety of a summary judgment decree, we will recite the facts in a light most favorable to Brown. *See Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991) ("The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor.").

In 1995, the federal government decided to close the Naval Ordinance Station in Louisville. Thereafter, the City of Louisville and Jefferson County[1] established LRA, a Kentucky non-profit, non-stock corporation and local development authority. The purpose of LRA was to plan and implement the conversion of this Naval Ordinance Station into a private facility owned by the authority. *See* Kentucky Revised Statutes (KRS) 58.180. LRA's

Articles of Incorporation provide as follows:

> [The LRA] is organized and operated exclusively to act as an agency, instrumentality and constituted authority of the City of Louisville ("City") and Jefferson County ("County") to accomplish public purposes of the City and the County and for the acquisition and financing of public projects for and on behalf of the City and the County. In carrying out its corporate purposes, the [LRA] shall have all the powers allowed corporations by KRS 273.160 *et seq.* and KRS 58.180.

From 1996 to 2003, LRA managed and operated the Naval Ordinance Station, which was renamed Technology Park. During this time, Brown served as LRA's Finance Administrator for Technology Park. On October 1, 2003, LRA entered into a management agreement with a private company, Titan Research and Development, LLC (hereinafter "Titan"). Pursuant to this agreement, Titan was to assume all management and operations duties for Technology Park. Brown's position with LRA was therefore eliminated.

Upon the elimination of his Finance Administrator position, Brown transitioned into another position with LRA. He was hired as a liaison between LRA and Titan. However, LRA directed that only part of Brown's work time was to be devoted to liaison duties. Pursuant to an agreement entered into by LRA and Titan, Brown was to devote up to fifty percent (50%) of his work time providing administrative services directly to Titan. LRA was reimbursed by Titan for fifty percent (50%) of the expenses, including salary, attributed to Brown. This agreement was terminated

---

1. In 2003, the City and the County merged into the Louisville/Jefferson County Metro Government.

by Titan on October 1, 2005. As a result, Brown's liaison position with LRA was eliminated, effective July 21, 2006.

Upon the elimination of his liaison position with LRA, Brown was offered the position of Economic Development Officer with the Metro Government's Development Authority. However, Brown declined to accept the position.

In November 2006, Brown filed a complaint against LRA and Metro Government asserting claims of promissory estoppel/detrimental reliance, fraud, and violations of the Kentucky Civil Rights Act. In his complaint, Brown stated that when he realized that his Finance Administrator position was being eliminated in 2003, he negotiated and was offered a position with Titan in their finance department.

Upon hearing of this job offer, Bruce Traughber, a LRA board member and secretary of the Metro Government Community Development Cabinet, contacted Brown and counter-offered him the liaison position. Brown stated that he would accept the liaison position in lieu of the position with Titan, but only if LRA would agree to employ him "long enough to get his 10 years in for [government] retirement and benefits." Ten years for Brown would have accrued in November 2007. Brown further alleged that "[i]t was understood between the parties that once the 10 years lapsed, Brown would become a 100% Titan employee."

According to Brown, Traughber agreed to this arrangement. Brown contends that the agreement with Titan whereby Brown was to devote fifty percent (50%) of his time providing administrative services to Titan and fifty percent (50%) of his time acting as a liaison between the two entities was subsequently entered to accomplish the objectives agreed to by Brown and Traughber.

In July 2005, Traughber made public remarks that were critical of Titan. At that time, Brown contacted David Morris, Director of the Metro Government Development Authority, and asked him whether his job was in danger. According to Brown, Morris assured him that it was not. Yet, on July 22, 2006, Brown's liaison position was eliminated. Brown states that he declined the position of Economic Development Officer with the Development Authority because it was a "demotion to the West End of Louisville."

In an order entered September 15, 2008, the trial court dismissed Brown's claims for promissory estoppel/detrimental reliance and fraud arising from the alleged oral agreement between Brown and Traughber. In so ruling, the trial court found that Traughber's alleged promise to provide Brown employment through his retirement date was not a "date certain for continued employment." Thus, Brown was an "at-will" employee subject to termination at any time. The trial court alternatively found that Brown did not provide "any reciprocal consideration" for the promise allegedly made by Traughber. As such, the trial court concluded that "the condition that LRA is required to retain Mr. Brown beyond his retirement date without the imposition of a corresponding duty on Mr. Brown to remain with LRA is a unilateral, unenforceable agreement . . . ."

On appeal, Brown contends that summary judgment was not warranted on his claims of promissory estoppel/detrimental reliance and fraud. Our black-letter law directs that "summary judgment is to be cautiously applied and should not be used as a substitute for trial." *Steelvest,* 807 S.W.2d. at 483. "Even though a trial court may believe the party opposing the motion may not succeed at trial, it should not

render a summary judgment if there is any issue of material fact." *Id.* at 480.

Designed to be narrow and exacting so as to preserve one's right to trial by jury, summary judgment is nevertheless appropriate in cases where the non-moving party relies on little more than "speculation and supposition" to support his claims. *O'Bryan v. Cave,* 202 S.W.3d 585, 588 (Ky. 2006) (internal citation omitted). Thus, non-moving parties are obligated to set forth "at least some affirmative evidence showing that there is a genuine issue of material fact for trial" to withstand a properly supported motion for summary judgment. *Steelvest,* 807 S.W.2d at 482. "The party opposing summary judgment cannot rely on their own claims or arguments without significant evidence in order to prevent a summary judgment." *Wymer v. JH Properties, Inc.,* 50 S.W.3d 195, 199 (Ky.2001).

Brown argues on appeal that the trial court erred in concluding that the facts of this case were not sufficient as a matter of law to support a finding that Brown was promised employment for a definite term. He further argues that the trial court erred as a matter of law in determining that the agreement, if made, was "a unilateral, unenforceable agreement."

We agree with Brown that the facts, when viewed in a light most favorable to him, are susceptible to a conclusion that Brown was promised employment by an LRA representative for a definite term— through November 2007 when Brown became eligible for retirement benefits. Neither the trial court nor Appellees cite to any applicable authority indicating that a contrary conclusion is mandated as a matter of law.

We further agree with Brown that the trial court erred in determining that Brown's claims were precluded as a matter of law because he failed to provide additional "reciprocal consideration" for Traughber's promise of continued employment. To support its ruling, the trial court cited to *Louisville & N.R. Co. v. Wells,* 289 Ky. 700, 160 S.W.2d 16 (1942). In *Wells,* Kentucky's highest court held that a breach of contract action could not be sustained between an employee and employer where the employer's promise to retain the employee for a definite period of time was not supported by a reciprocal promise by the employee to continue in service to the employer for the prescribed time period. *Id.* at 18; *see also Clark v. Cincinnati, N.O. & T.P. Ry. Co.,* 258 Ky. 197, 79 S.W.2d 704, 706 (1935) (enforceable contracts for definite periods of time "should show obligation on the part of the employee to render service for a fixed period and reciprocal obligation on the employer's part to retain the employee's services").

However, in *Shah v. American Synthetic Rubber Corp.,* 655 S.W.2d 489 (Ky.1983), the above rule was modified. In *Shah,* the Kentucky Supreme Court joined "a number of other jurisdictions which hold that parties may enter into a contract of employment terminable only pursuant to its express terms . . . by clearly stating their intention to do so, even though no other considerations than services to be performed or promised, is expected by the employer, or performed or promised by the employee." *Id.* at 492.

Moreover, the Kentucky Supreme Court's holding in *United Parcel Service Co. v. Rickert,* 996 S.W.2d 464 (Ky.1999), precludes summary dismissal of Brown's claims for the reasons set forth in the trial court's order regardless of whether the term promised to Brown was definite or indefinite. In *Rickert,* a pilot prevailed on claims of fraud and promissory estoppel resulting from an oral representation made by a potential employer. *Id.* at 467.

The pilot was promised future indefinite employment with United Parcel Service if he continued work for another airline during a transition period. *Id.* at 468–69. Due to the pilot's detrimental reliance on this false oral promise, the pilot forwent other employment opportunities and was damaged as a result. *Id.* In affirming the jury's verdict on appeal, the Kentucky Supreme Court held that these circumstances were sufficient to sustain a verdict of fraud against United Parcel Service. *Id.* at 468.

Like *Rickert,* Brown alleges that he was defrauded by a potential employer who knowingly made misrepresentations to him for the purpose of inducing him to forgo another job opportunity. The pilot in *Rickert* was permitted to prevail on his fraud allegations even though he provided no reciprocal consideration to United Parcel Service other than his agreement to forgo other employment opportunities. In light of the holdings set forth in *Rickert* and *Shah,* if a jury should believe Brown's testimony that LRA knowingly induced Brown to forgo another job opportunity by expressly agreeing to employ him for a specified period of time, then Brown's failure to provide additional "reciprocal consideration" is not a bar to his claim. Therefore, the trial court's reasoning is not sufficient to support its dismissal of Brown's fraud and promissory estoppel/detrimental reliance claims.

As it concerns Brown's claim of promissory estoppel/detrimental reliance, it should be noted that the alleged contract in this case was not capable of being performed within one year and was not in writing. In *Sawyer v. Mills,* 295 S.W.3d 79 (Ky.2009), the Kentucky Supreme Court expressed an intent to move away from the broad implications of the *Rickert* holding as it relates to oral representations in violation of the Statute of Frauds. *Id.* at 89–90 (despite contrary language in *Rickert,* claims of breach of contract and promissory estoppel likely cannot defeat statute of frauds); *see* KRS 371.010 (agreements that are not to be performed within one year are not enforceable unless they are in writing).

Yet, neither the parties nor the trial court have raised or addressed the Statute of Frauds issue in this case. Other issues raised by the parties, but never addressed by the trial court, include whether LRA was entitled to governmental immunity from Brown's claims and whether LRA was liable for any promises it made to Brown in light of the fact that Brown was actually employed by Metro Government, not the LRA.[2] The trial court has also not considered any of the specific elements of fraud and whether Brown has set forth sufficient evidence to support each of these elements. *See Radioshack Corp. v. ComSmart, Inc.,* 222 S.W.3d 256, 262 (Ky.App. 2007) (plaintiff must establish by clear and convincing evidence six elements in order to prevail on a claim for fraud). Accordingly, we decline to devote any additional consideration to these issues as it is unlikely we have authority to do so. *See Commonwealth v. Maricle,* 15 S.W.3d 376, 379–80 (Ky.2000) (court is limited to review of those issues raised and ruled on by trial court); *Regional Jail Authority v. Tackett,* 770 S.W.2d 225, 228 (Ky.1989) ("The Court of Appeals is without authority to review issues not raised in or decided by the trial court."). In any event, this task is best reserved for the trial court as it is in the best position to consider any additional

---

2. The September 15, 2008, order did make the following statement in the context of determining a claim against LRA for racial discrimination under the Kentucky Civil Rights Act, "the evidence of record strongly supports a finding that Mr. Brown was a Metro Government employee assigned to work for LRA."

arguments presented to it on remand and to address these arguments with appropriate findings.

Accordingly, we hereby vacate the portion of the September 15, 2008, order of the Jefferson Circuit Court dismissing Brown's claims of promissory estoppel/detrimental reliance and fraud. We hereby affirm the portion of the order which dismissed Brown's claims of racial discrimination. This case is remanded to the circuit court for further proceedings consistent with this opinion.

ACREE, Judge, concurs.

KELLER, Judge, concurs in part, dissents in part, and files separate opinion.

KELLER, Judge, concurring in part and dissenting in part.

I respectfully concur in part and dissent in part. The majority affirmed the trial court's dismissal of Brown's claims of racial discrimination. Because Brown has not appealed the trial court's dismissal of those claims, I concur.

The majority reversed the trial court's summary judgment as to Brown's claims of promissory estoppel/detrimental reliance. Again, I concur. Having reviewed the record, it is unclear to me whether Brown's employer, be it Metro Government or LRA, promised Brown continued employment in the position he held in 2003 or just continued employment in some capacity. In his complaint, Brown states that he was offered employment in the same position at the same pay rate. However, in his deposition he testified only to a promise of continued employment. If the promise was of continued employment in the same position with the same pay, then Brown has an argument on the issue of promissory estoppel/detrimental reliance. However, if the promise was simply of employment, the employer fulfilled its

promise by offering Brown the Economic Development Officer position. In either case, what the terms of any offer of continued employment were is an issue of fact yet to be determined.

The majority also reverses the trial court's summary judgment as to Brown's claim of fraud. I must respectfully dissent. A party claiming fraud must establish six elements by clear and convincing evidence: (1) material representation; (2) which is false; (3) known to be false or made recklessly; (4) made with inducement to be acted upon; (5) acted in reliance thereon and, (6) causing injury. *United Parcel Service Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky.1999).

As noted by the majority, the pilot in *Rickert* recovered for his claims of fraud and detrimental reliance. However, in *Rickert*, representatives from United Parcel Service knowingly promised future employment to a number of pilots when they knew that there would not be enough jobs for all of the pilots. Brown has produced no evidence that anyone at Metro Government or LRA knowingly made a false promise of continued employment. The only evidence he has produced is his testimony that he was promised continued employment and that promise was not kept. That testimony, alone, is not sufficient to support a claim of fraud.

Finally, I can find no evidence that Metro Government or LRA asserted the affirmative defense of statute of frauds. *See* Kentucky Rule of Civil Procedure 8.03. Therefore, I agree with the majority that whether the statute of frauds bars Brown's claims is better left to the trial court.